## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES REIGH and ERICA REIGH, his wife, | Case No.: 3:21-cv-191 |
| Plaintiffs, | Erin K. Rudert, Esquire |
| | Ainsman Levine, LLC |
| v. | 310 Grant Street, Suite 1500 |
| | Pittsburgh, PA 15219 |
| Brand Industrial Services, Inc. i/t/d/b/a BrandSafway and/or BrandSafway Industries Pittsburgh; NRG Energy, Inc.; NRG Energy Services, LLC; and, NRG Homer City Services, LLC | Phone: 412-338-9030 |
| | PA ID No. 200432 |
| | er@ainsmanlevine.com |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

### COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiffs, Charles Reigh and Erica Reigh, his wife, by and through their attorneys, ERIN K. RUDERT, ESQUIRE, and AINSMAN LEVINE, LLC, and file the following Complaint in Civil Action:

### PARTIES

1. Plaintiffs, Charles Reigh and Erica Reigh, are married adult individuals who currently reside at 109 Carson Heights Drive, Duncansville, Blair County, Pennsylvania 16635.

2. Defendant, Brand Industrial Services, Inc., is a Delaware corporation with a principal place of business located at 1325 Cobb International Drive, Suite A-1, Kennesaw, Georgia 30152.

3. At all times material hereto, it believed and therefore averred that Defendant, Brand Industrial Services, Inc., was trading and doing business under the names "BrandSafway" and "BrandSafway Industries Pittsburgh."

4. Defendant, NRG Energy, Inc., is a Delaware corporation with commercial corporate headquarters located at 804 Carnegie Center, Princeton, New Jersey 08540 and operational headquarters located at One Shell Plaza, 910 Louisiana Street, Suite 410, Houston, Texas 77002.

5. Defendant, NRG Energy Services, LLC, is a Delaware limited liability company with corporate headquarters located at 211 Carnegie Center, Princeton, New Jersey 08540.

6. Defendant, NRG Homer City Services, LLC, is a Delaware limited liability company with corporate headquarters located at 211 Carnegie Center, Princeton, New Jersey 08540.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to complete diversity of citizenship under 28 U.S.C. § 1332 as the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

8. This has Court has supplemental jurisdiction over all other claims or aspects of this matter that are so related to form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2), as the conduct giving rise to the within matter occurred in Indiana County, Pennsylvania, which is part of this judicial district.

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

10. At all times material hereto, there existed an energy generating facility in Homer City, Indiana County, Pennsylvania known as the Homer City Generating Station, located at 1750 Power Plant Road, Homer City, Pennsylvania 15748.

11. At all times material hereto, it is believed and therefore averred that the Homer City Generating Station was controlled, maintained, and otherwise operated, either individually, jointly, or in some combination, by one or more of Defendants, NRG Energy, Inc.; NRG Energy Services, LLC; and/or NRG Homer City Services, LLC [the "NRG Defendants"].

12. At all times material hereto, it is believed and therefore averred that one or more of the NRG Defendants entered into a contract with one or more of the owners of the Homer City Generating Station, including but not limited to General Electric, for one, some, or all of the NRG Defendants to operate the Homer City Generating Station.

13. At all times material hereto, it is believed and therefore averred that that one or more of the NRG Defendants in its capacity as the operator of the Homer City Generating Station, entered into a contract or other agreement with Defendant, Brand Industrial Services, Inc. i/t/d/b/a BrandSafway and/or BrandSafway Industries Pittsburgh ["Brand"].

14. At all times material hereto, it is believed and therefore averred that Defendant, Brand, provided certain services on the premises of the Homer City Generating Station, including but not limited to the provision of scaffolding and the provision of a labor crew to assemble/disassemble the scaffolding provided by Defendant, Brand.

15. At all times material hereto, all Defendants acted by and through various employees, agents, contractors, sub-contractors, assigns, servants, and/or others who were acting within the course and scope of their employment, agency, contract, servitude, or other relationship with one of more of Defendants.

16. At all times material hereto, Plaintiff, Charles Reigh, was employed by System Planning Corporation and was assigned to the Homer City Generating Station as a consultant relative to the NID Dry Flue Gas Desulphurization Systems.

17. At all times material hereto, the NID Dry Flue Gas Desulphurization Systems at the Homer City Generating Station contained multiple scrubber modules within the NID area.

18. The incident hereinafter complained occurred on or about May 12, 2020, on the Homer City Generating Station premises in the NID area between two modules designated as the 1B and 1C modules.

19. Sometime prior to May 12, 2020, a process upset occurred which resulted in three of the ten modules located at the Homer City Generating Station being offline and causing a need for a fluid trough cleanout.

20. It is believed and therefore averred that the Homer City Generating Station requires nine of the ten modules to be online to run at full load, and the cleanup and return to operation of the three affected modules was made a high priority within the NID unit.

21. It is believed and therefore averred that the process of cleaning and/or decontaminating the modules in question required scaffolding to be erected in the fluid trough to permit the inside of the module to be access and cleaned.

22. In the days prior to May 12, 2020, it is believed and therefore averred that employees of Defendant, Brand, erected scaffolding in the fluid trough of the 1C module in order for the 1C module to cleaned.

23. At all times material hereto, between the 1B and 1C module, there existed a narrow metal catwalk, which catwalk allowed individuals to reach the fluid trough level of the 1C module where sight glasses are installed to provide the ability to look into the 1C module fluid trough to see what was occurring inside.

24. It is believed and therefore averred that on May 11, 2020, the cleaning of the 1C module was completed and that during the third shift between the evening of May 11, 2020, and

the morning of May 12, 2020, employees of Defendant, Brand, disassembled the scaffolding from the 1C module and placed and/or stacked the pieces of the disassembled scaffolding on the metal catwalk described herein, located between the 1C module and the 1B module.

25. At all times material hereto, the NID area, including modules 1C and 1B and the metal walkway in question, were under the supervision and control of Eric Plack, an employee of one of the NRG Defendants.

26. On the morning of May 12, 2020, Plaintiff, Charles Reigh, arrived at the Homer City Generating Station and began working with Eric Plack on the 1C module, which had to be reloaded with specific chemicals in order to bring the unit back online.

27. Throughout the early portion of Plaintiff's work shift, employees of Defendant, NRG, were working to reload the now-clean 1C module with the required chemicals, which process involves the use of a pump truck to pump the chemicals into the module.

28. During the course of attempting to pump the necessary chemicals into the 1C module, Plaintiff was at the 1C fluid trough sight glass with Graham Silk, an NID operator with NRG, and recognized that there was a continued issue with the module trough not filling as it should and the pump truck was having to increase the pressure for the chemicals to flow into the module.

29. At or around 9:00 a.m., on May 12, 2020, Eric Plack came to the 1C module fluid trough level in order to discuss and investigate the source of the continued problem with the module.

30. Plaintiff and Eric Plack looked into the 1C module to try to assess why the module was not filling correctly and then proceeded to discuss the ongoing problems with the 1B, 1C, and 1J modules.

31. At all times material hereto, the catwalk in question was in a poorly lit area, which Plaintiff believes and therefore avers was to either a lack of functioning light fixtures in the area and/or a lack of functioning light bulbs in the existing light fixtures.

32. After looking into the sight glasses, Plaintiff and Eric Plack remained on the catwalk for some time discussing what could be causing the persistent problem with the 1C module.

33. As Plaintiff was standing on the catwalk, talking to Eric Plack, the disassembled scaffolding was behind Plaintiff on the catwalk and was not marked or secured in any manner.

34. At all times material hereto, Eric Plack was an employee of the NRG Defendants and was the supervisor in charge of the area of the catwalk.

35. As Plaintiff turned to walk down the catwalk, away from Eric Plack, he caught his foot in the pile of scaffolding poles, which both caused the poles to fall out of the pile and across the walkway and caused Plaintiff to trip and fall forward. As Plaintiff tried to step forward to catch his balance from tripping on the piled scaffolding, the pile of poles was falling into the area ahead of Plaintiff and Plaintiff was caused to step onto the poles due to his forward momentum and to slide and fall to the ground, landing directly on his left shoulder and side.

36. As a direct and proximate result of the above-described fall, Plaintiff was caused to suffer and sustain a displaced, impacted, comminuted fracture of the left proximal humerus, which required surgical intervention consisting of open reduction and internal fixation. Plaintiff further suffered bruising, contusions, abrasions, sprain, strain, and other injuries due to his striking his body in the fall.

37. As a further direct and proximate result of the fall, Plaintiff has been damaged as follows:

a. He has incurred and may in the future incur costs and expenses for medical and rehabilitative care, including the services of physicians, nurses, therapists, and other professionals, medications, medical devices, and other medical treatments as prescribed and/or recommended;

b. He has and may in the future suffer a loss of wages and/or a loss of earning capacity;

c. He has suffered and will in the future suffer physical and emotional pain, suffering, distress, anguish, stress, and anxiety;

d. He has been permanently scarred and disfigured;

e. He has and may in the future be embarrassed and humiliated;

f. He has and will suffer a loss of life's pleasures;

g. His general health, strength, and vitality have been impaired.

## COUNT I

### Charles Reigh v. Brand Industrial Services, Inc. i/t/d/b/a BrandSafway and/or BrandSafway Industries Pittsburgh

### NEGLIGENCE

38. Plaintiff incorporates all preceding paragraphs of this Complaint by reference as if the same were set forth at length herein.

39. At all times material hereto, it is believed and therefore averred that one or more employees, agents, servants, contractors, and/or assigns of Defendant, Brand, were on site at the Homer City Generating Station for the purpose of erecting/disassembling the scaffolding in question.

40. At all times material hereto, it is believed and therefore averred that that one or more employees, agents, servants, contractors, and/or assigns of Defendant, Brand, while acting in the scope of said employment, agency, servitude, contract and/or other capacity, negligently and/or carelessly placed the disassembled scaffolding on the catwalk described herein.

41. The incident described herein, and Plaintiff's injuries and damages therefrom, were caused directly and proximately by the individual, joint, several, and/or combined negligence of all Defendants, and of Defendant, Brand, directly and through the acts and/or or omissions of its employees, agents, servants, contractors, and/or assigns, as set forth herein and in the following particulars:

   a. In placing the disassembled scaffolding on a walking surface;

   b. In placing the disassembled scaffolding on a walking surface in an area where other individuals needed to walk in order to access portions of the premises necessary for the work being performed at the time;

   c. In failing to secure the disassembled scaffolding such that the poles could not shift, fall, or otherwise enter the walking surface;

   d. In failing to guard against people using the catwalk coming into contact with the disassembled scaffolding;

   e. In failing to mark the scaffolding with any type of visual indicator;

   f. In placing the disassembled scaffolding in a walking area for which there was no alternative route;

   g. In placing disassembled scaffolding in an active work area;

   h. In failing to warn Plaintiff of the presence of the disassembled scaffolding;

   i. In violating the provisions of OSHA 1910 Subpart D regarding walking-working surfaces;

   j. In violating the minimum standards set forth in the NRG Corporate Safety Manual provisions for walking-working surfaces;

   k. In failing to train its employees regarding storage of disassembled scaffolding;

   l. In failing to train its employees to maintain walking surfaces clear of any tripping hazards;

   m. In failing to train its employees to mark, tape, flag, or other visually delineate tripping hazards created during the course of Defendant's work activities;

n. In failing to set proper policy and procedures regarding storage of disassembled scaffolding;

o. In failing to set proper policy and procedures regarding maintenance and inspection of clear walking surfaces;

p. In failing to set proper policies and procedures for marking or otherwise warning individuals of the presence of a tripping hazard created by Defendant through its employees;

q. In failing to train its employees regarding the hazards associated with walking surface obstructions and/or tripping hazards;

r. In failing to train its employees regarding the identification and removal of tripping hazards and/or walking surface obstructions;

s. In failing to properly supervise its work crews; and,

t. In failing to communicate with the NRG Defendants regarding the staging of disassembled scaffolding in work areas.

**WHEREFORE**, Plaintiff, Charles Reigh, demands judgment in his favor and against all Defendants, individually, jointly and/or severally, and against Defendant, Brand Industrial Services, Inc. i/t/d/b/a BrandSafway and/or BrandSafway Industries Pittsburgh, for an amount in excess of the jurisdictional limits of this Court, together with costs and interest.

## COUNT II

### Charles Reigh v. NRG Energy, Inc.; NRG Energy Services, LLC; and, NRG Homer City Services, LLC

### NEGLIGENCE

42. Plaintiff incorporates all preceding paragraphs of this Complaint by reference as if the same were set forth at length herein.

43. The incident described herein, and Plaintiff's injuries and damages therefrom, were caused directly and proximately by the individual, joint, several, and/or combined negligence of all Defendants, and of the NRG Defendants, directly and through the acts and/or or omissions of

their employees, agents, servants, contractors, and/or assigns, as set forth herein and in the following particulars:

a. In placing the disassembled scaffolding on a walking surface;

b. In allowing a contractor, employee, and/or other individual to place the disassembled scaffolding on walking surface;

c. In placing the disassembled scaffolding on a walking surface in an area where other individuals needed to walk in order to access portions of the premises necessary for the work being performed at the time;

d. In failing to secure the disassembled scaffolding such that the poles could not shift, fall, or otherwise enter the walking surface;

e. In failing to require the contractor to secure the disassembled scaffolding;

f. In failing to guard against people using the catwalk coming into contact with the disassembled scaffolding;

g. In failing to mark the scaffolding with any type of visual indicator;

h. In placing the disassembled scaffolding in a walking area for which there was no alternative route;

i. In placing disassembled scaffolding in an active work area;

j. In failing to warn Plaintiff of the presence of the disassembled scaffolding;

k. In allowing and/or requiring Plaintiff to enter an area where unsafe walking surfaces existed;

l. In failing to make the premises safe for those, including Plaintiff, entering the premises;

m. In failing to exercise the control required over subcontractors, contractors, employees, agents, assigns, and/or others to prevent said individuals from created hazardous conditions on the premises;

n. In failing to properly maintain the lighting systems of the premises;

o. In failing to replace burnt out lightbulbs to provide adequate lighting for the premises;

p. In failing to install and/or maintain appropriate light fixtures to illuminate the premises sufficiently;

q. In violating the provisions of OSHA 1910 Subpart D regarding walking-working surfaces;

r. In violating the minimum standards set forth in the NRG Corporate Safety Manual provisions for walking-working surfaces;

s. In failing to train its employees, contractors, agents, assigns, and/or other regarding storage of disassembled scaffolding;

t. In failing to train its employees, contractors, agents, assigns, and/or other to maintain walking surfaces clear of any tripping hazards;

u. In failing to train its employees, contractors, agents, assigns, and/or other to mark, tape, flag, or other visually delineate tripping hazards created during the course of Defendant's work activities;

v. In failing to set proper policy and procedures regarding storage of disassembled scaffolding;

w. In failing to set proper policy and procedures regarding maintenance and inspection of clear walking surfaces;

x. In failing to set proper policies and procedures for marking or otherwise warning individuals of the presence of a tripping hazard created by Defendant through its employees;

y. In failing to properly supervise its work crews;

z. In failing to train its supervisors regarding the recognition of hazards;

aa. In failing to train its supervisors regarding their obligation to inspect for hazards and correct hazards upon detection;

bb. In leading Plaintiff into an area of the premises where tripping and/or falling hazards were present; and,

cc. In failing to instruct Defendant, Brand, and/or the employees, agent, contractors, assigns, and/or other actors of Defendant, Brand, to place the scaffolding in a different location so as not to create a walking surface obstruction and hazard.

**WHEREFORE,** Plaintiff, Charles Reigh, demands judgment in his favor and against all Defendants, individually, jointly and/or severally, and against Defendants, NRG Energy, Inc.; NRG Energy Services, LLC; and, NRG Homer City Services, LLC, for an amount in excess of the jurisdictional limits of this Court, together with costs and interest.

## COUNT III

### Erica Reigh v. Brand Industrial Services, Inc. i/t/d/b/a BrandSafway and/or BrandSafway Industries Pittsburgh; NRG Energy, Inc.; NRG Energy Services, LLC; and, NRG Homer City Services, LLC

### LOSS OF CONSORTIUM

44. Plaintiff incorporates all preceding paragraphs of this Complaint by reference as if the same were set forth at length herein.

45. At all times material hereto, Plaintiff, Erica Reigh, was married to Plaintiff, Charles Reigh, and resided with him as his wife.

46. As a direct and proximate result of the injuries and damages caused to Plaintiff, Charles Reigh, by the individual, joint, several, and/or combined negligence of all Defendants names herein, Plaintiff, Erica Reigh, has been damaged as follows:

   a. She has incurred and may in the future be required to incur costs and expenses for medical and rehabilitative care, including the services of physicians, nurses, therapists, and other professionals, medications, medical devices, and other medical treatments as prescribed and/or recommended for the treatment of her husband's injuries;

   b. She has and may in the future be deprived of her husband's earnings;

   c. She has and may in the future be deprived of her husband's care, comfort, society, support, services, companionship, affection, and attention; and,

   d. She has and will in the future suffer a loss of consortium.

**WHEREFORE,** Plaintiff, Erica Reigh, demands judgment in her favor and against all Defendants, individually, jointly and/or severally, for an amount in excess of the jurisdictional limits of this Court, together with costs and interest.

Respectfully submitted,

                                AINSMAN LEVINE, LLC

                                By: */s/ Erin K. Rudert, Esquire*
                                Erin K. Rudert, Esquire
                                310 Grant Street, 15th Floor
                                Pittsburgh, PA  15219
                                Tel:  (412) 338-9030
                                Fax:  (412) 338-9167
                                er@ainsmanlevine.com

Date:  October 25, 2021